UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| MELINDA ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-1156 (AJT/TCB) |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Melinda Allen

("Plaintiff") seeks judicial review of the final decision of Nancy A. Berryhill ("Defendant"), the

former Acting Commissioner of Social Security,[1] denying Plaintiff's claim for Disability

Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. On March 12, 2018,

the certified Administrative Record ("R.") was filed under seal, pursuant to Local Civil Rules

5(B) and 7(C)(1). By April 23, 2018, both parties filed motions for summary judgment with

briefs in support, which are now ripe for resolution.[2] Pursuant to 28 U.S.C. § 636(b)(1)(B), the

---

1. As of November 17, 2017, Defendant's status as Acting Commissioner of Social Security
violated the Federal Vacancies Reform Act of 1988, which limits the time a position can be filled
by an acting official. See U.S. Gov't Accountability Off., B-329853, VIOLATION OF THE TIME
LIMIT IMPOSED BY THE FEDERAL VACANCIES REFORM ACT OF 1998—COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION (Mar. 6, 2018). However, Defendant appears to continue to
functionally lead the Social Security Administration ("SSA") and is the proper defendant in this
case.

2. The motions and briefs in this case include Plaintiff's Motion for Summary Judgment (Dkt. 9)
("Pl.'s Mot. Summ. J."), Plaintiff's Memorandum in Support of Motion for Summary Judgment
(Dkt. 10) ("Pl.'s Mem. Supp."), Defendant's Motion for Summary Judgment (Dkt. 12) ("Def.'s
Mot. Summ. J."), and the Memorandum of Law in Support of Defendant's Motion for Summary
Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (Dkts. 13 & 14)

undersigned U.S. Magistrate Judge recommends, for the following reasons, that Plaintiff's

Motion for Summary Judgment (Dkt. 9) be DENIED and that Defendant's Motion for Summary

Judgment (Dkt. 12) be GRANTED, and that the final decision of Defendant be AFFIRMED.

## I. PROCEDURAL BACKGROUND

Plaintiff filed the presently disputed application for DIB on July 9, 2013, alleging

disability with an alleged onset date ("AOD") of November 9, 2012. (R. at 157-59.) On January

14, 2014, Plaintiff amended her alleged AOD to April 15, 2013. (Id. at 162.) Later, on July 25,

2016, Plaintiff again amended her alleged AOD to September 3, 2013. (Id. at 188-89.) Plaintiff's

claims were first denied on December 5, 2013, then again on reconsideration on August 18,

2014. (Id. at 76-88, 90-104, 114-19.) On August 29, 2014, Plaintiff filed a request for a hearing

in front of an administrative law judge ("ALJ"). (Id. at 120-21.) The hearing was held in front of

ALJ F.H. Ayer on August 24, 2016, with Plaintiff being represented by counsel, and during

which the testimonies of Plaintiff and a vocational expert ("VE") were taken. (Id. at 37-75.) The

ALJ issued his decision denying Plaintiff's claim on October 21, 2016. (Id. at 14-30.) On

November 9, 2016, Plaintiff requested review of the ALJ's decision to the Appeals Council for

the Office of Disability and Adjudication and Review ("Appeals Council"). (Id. at 154.) The

Appeals Council denied Plaintiff's request for review on September 1, 2017, making the ALJ's

decision the final decision of Defendant. (Id. at 1-3.) Plaintiff filed her Complaint (Dkt. 1) for

judicial review of Defendant's decision on October 16, 2017. Defendant filed her timely Answer

(Dkt. 5) on March 12, 2018. By April 23, 2018, Plaintiff filed her Motion for Summary

Judgment (Dkt. 9) and Defendant filed her Motion for Summary Judgment (Dkt. 12). The matter

is now ripe for review.

---

("Def.'s Mem. Supp. & Opp'n"). Plaintiff did not file a response in opposition to Defendant's
motion for summary judgment or a reply in support of her motion for summary judgment.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence has long been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Put another way, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Court must defer to Defendant's decision "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. See Coffman v. Bowen, 829 F.2d 514, 517-18 (4th Cir. 1987).

While the aforementioned standard of review is deferential, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. See id. at 517. With this standard in mind, the Court evaluates the ALJ's findings and decision.

## III. THE ALJ'S DECISION

An ALJ is required to employ a five-step sequential evaluation in every Social Security

3

disability claim analysis to determine a claimant's eligibility. The Court examines this five-step

process on appeal to determine whether the correct legal standards were applied in this case, and

whether Defendant's resulting decision is supported by substantial evidence in the record. 20

C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made

the following findings of fact and conclusions of law.

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in

substantial gainful activity since September 2, 2013, which the ALJ accepted as Plaintiff's

amended AOD in light of Plaintiff seeking the AOD to be September 3, 2013. (R. at 19.) At step

two of the sequential evaluation, the ALJ found Plaintiff's cervical spine degenerative disc

disease, status post ACDF from C5-C7, postlaminectomy syndrome spondylosis, radiculitis,

cervicalgia, arthritis, sprain/strain, fibromyalgia, myalgia, insomnia, chronic fatigue syndrome,

chronic pain syndrome, inflammatory arthritis, rheumatoid arthritis, obesity, asthma, lumbosacral

spondylosis, lumbar strain, degenerative disc disease, brachial neuritis, bilateral carpal tunnel

syndrome, and ulnar neuropathy to be severe medically determinable impairments. (Id. at 19.) At

step three of the sequential evaluation, the ALJ found Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 22.) In between steps three and

four of the sequential evaluation, the ALJ found that Plaintiff had the residual functional capacity

("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), meaning that Plaintiff

could occasionally life and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand

and/or walk about six hours in an eight-hour workday, sit for a total of about six hours in an

eight-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and

crawl, never climb ladders, ropes, and scaffolds climb ladders, ropes, or scaffolds, that Plaintiff

4

required the ability to alternate between sitting and standing about every thirty minutes,[3] and that Plaintiff must avoid concentrated exposure to extreme cold and hazards, such as machinery and heights, avoid concentrated exposure to fumes odors, dusts, gases, poor ventilation, and avoid exposure to latex products. (Id.) At step four of the sequential evaluation, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 28.) At step five of the sequential evaluation, the ALJ found that Plaintiff was able to perform jobs that existed in significant numbers in the national economy. (Id.) Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from September 2, 2013, to the date of the ALJ's decision. (Id. at 30.)

## IV. ANALYSIS

Plaintiff essentially raises four issues on appeal in supporting its contention that Defendant's final decision fails to be supported by substantial evidence and is erroneous as a matter of law. First, Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC by improperly evaluating Plaintiff's subjective symptoms of pain. (Pl.'s Mem. Supp. at 6-10.) Second, Plaintiff argues the ALJ erroneously assessed Plaintiff's RFC by improperly evaluating the objective medical evidence that the ALJ did consider. (Id. at 8-10.) Third, Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC by failing to consider Plaintiff's manipulative limitations in her hands and fingers that resulted from Plaintiff's rheumatoid arthritis and bilateral carpal tunnel syndrome. (Id. at 10-11.) Fourth, Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC by improperly disregarding the opinion of Plaintiff's treating rheumatologist, Dr. Rosalia M. Lomeo. (Id. at 12.)

---

3. The ALJ's determination that Plaintiff required the ability to alternate between sitting and standing about every thirty minutes is often referred to as incorporating a "sit/stand option." See S.S.R. 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983).

Each issue raised on appeal by Plaintiff involves the ALJ's determination of Plaintiff's RFC. After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.902(e)-(f), 416.945(a)(1). RFC is generally defined as the most that an individual is able to do despite limitations caused by his or her impairments. Id. §§ 404.1545(a)(1), 416.945(a)(1). In analyzing a claimant's abilities, the ALJ must assess the nature and extent of the claimant's physical abilities, mental abilities, and other abilities affected by impairments and then determine the claimant's RFC for work activity on a regular and continuing basis. Id. §§ 404.1545(b)-(d), 416.945(b)-(d); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). In the RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7. In making the RFC assessment, an ALJ is required to consider all relevant medical evidence and other evidence in the case record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Plaintiff's four issues on appeal each address a specific type of evidence related to Plaintiff's RFC assessment: evidence of Plaintiff's subjective symptoms of pain, objective medical evidence, evidence of Plaintiff's manipulative limitations, and the opinions of Dr. Lomeo as Plaintiff's treating rheumatologist. Each of Plaintiff's arguments addressing each type of evidence is considered in turn below.

### A. The Evaluation of Plaintiff's Subjective Symptoms of Pain

Plaintiff asserts that the ALJ failed to properly assess Plaintiff's RFC by not properly evaluating Plaintiff's subjective symptoms of pain. (Pl.'s Mem. Supp. at 6-10.) Specifically, Plaintiff argues that the ALJ only considered the objective medical evidence in his reasoning for

discounting Plaintiff's subjective symptoms of pain, and that Plaintiff was entitled to have other evidence considered. (Id. at 7-8, 10.) In response, Defendant argues that the ALJ did properly evaluate Plaintiff's subjective symptoms of pain and that the ALJ properly determined such subjective testimony to be not entirely consistent with the medical evidence and other evidence of record, thereby at least partially discounting it. (Def.'s Mem. Supp. & Opp'n at 13-14.)

In evaluating a claimant's subjective symptoms, an ALJ must follow a two-step analysis. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). The first step requires an ALJ to determine the existence of an underlying medically determinable impairment that could reasonably produce the claimant's complaints, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2016 WL 1119029, at *2-3. When the ALJ determines that the underlying impairment reasonably could produce the claimant's complaints, the ALJ moves to the second part of the analysis, which involves the evaluation of subjective symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 WL 1119029, at *2, 4. In this case, the ALJ determined that Plaintiff's medically determinable impairments could have reasonably caused her complaints of pain. (R. at 24.) Therefore, the second part of the two-step complaint evaluation was implicated: the evaluation of subjective symptoms.

An ALJ must evaluate the intensity and persistence of a claimant's subjective symptoms, such as pain, and determine the extent to which the symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c), SSR 16-3p, 2016 WL 1119029, at *4. The ALJ must consider all of the available evidence of symptoms from both objective medical evidence and "other evidence." 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3), SSR 16-3p, 2016 WL 1119029, at *8. "Other evidence" includes information about prior work records, the claimant's statements about her symptoms, evidence submitted by the claimant's medical sources, and

observations by SSA employees and other persons, among other types of information. 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3). The ALJ then determines the extent to which the subjective

symptoms are consistent or inconsistent with the available evidence. Id. §§ 404.1529(c)(4),

416.929(c)(4); SSR 16-3p, 2016 WL 1119029, at *8. In explaining a subjective symptom

evaluation, an ALJ must articulate which of a claimant's subjective symptoms are supported by

the evidence, and an ALJ cannot make a blanket statement addressing all subjective symptoms.

See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013); SSR 16-3p, 2016 WL 1119029, at *9.

This includes stating which subjective symptoms are consistent or inconsistent with the available

evidence. SSR 16-3p, 2016 WL 1119029, at *8. When subjective symptoms are consistent with

the available evidence, an ALJ must determine that the subjective symptoms are more likely to

cause the claimant limitations. Id. at *7. On the other hand, when subjective symptoms are

inconsistent with the available evidence, the ALJ must determine that the subjective symptoms

are less likely to cause the claimant limitations. Id. However, an ALJ may not disregard a

claimant's subjective symptoms of pain solely based on their inconsistency with objective

medical evidence alone. See Foster v. Heckler, 780 F.2d 1125, 1129 n.6 (4th Cir. 1986); 20

C.F.R. §§ 404.159(c)(2), 416.929(c)(2).

   Here, the ALJ addressed and considered Plaintiff's subjective symptoms. In his decision,

the ALJ pointed to various instances of Plaintiff reporting symptoms of pain. The ALJ made note

of hearing testimony, stating that Plaintiff "testified at the hearing that her upper extremities are

chronically painful, swollen, heavy, tingling, and weak" and that Plaintiff "often drops things

and has difficulty with tasks such as cutting food, opening jars, and buttoning buttons." (R. at

23.) Further, the ALJ made note of Plaintiff's subjective statements of pain to various medical

professionals at various dates. The ALJ noted that Plaintiff reported "increased hand pain and

8

swelling" on May 31, 2013, to her treating rheumatologist Dr. Lomeo. (Id. at 24.) The ALJ noted that Plaintiff reported "chronic neck pain and being unable to work due to foot pain, back pain, and feeling weak" on June 5, 2013, to her primary care physician Dr. Susan Holland. (Id.) The ALJ noted that Plaintiff reported "joint pain in her hands," albeit to lesser degree than before, in follow-ups with Dr. Lomeo in July and August 2013. (Id.) The ALJ noted that Plaintiff reported "hand pain and swelling," "difficulty even putting on makeup, inability to lift anything, and inability to stand for more than a few minutes," and an inability to sometimes even "get out of bed" to both Dr. Lomeo and Dr. Holland on December 2, 2013. (Id.) The ALJ noted that Plaintiff reported "continued hand pain and swelling and reliance on her husband for help with household chores" to Dr. Lomeo on February 12, 2014, April 30, 2014, and June 23, 2014. (Id. at 25.) The ALJ noted that Plaintiff reported "hand pain and swelling, inability to do any activities and reliance on her husband for help with most tasks, and inability to sit or stand for prolonged periods" to Dr. Lomeo on September 8, 2014. (Id.) The ALJ noted that Plaintiff reported "neck pain radiating into her upper extremities, with frequent parathesias" during a neurological consultation with Dr. Naurang Gill on October 23, 2014. (Id.) The ALJ noted that Plaintiff's subjective complaints continued as previously described during follow up visits with Dr. Lomeo in December 2014, March 2015, and June 2015. (Id. at 26.) The ALJ noted that Plaintiff's pain and swelling was aggravated by a fall in August 2015. (Id.) The ALJ noted that Plaintiff reported "ongoing and worsened ... hand pain and swelling" to Dr. Lomeo in December 2015, March 2016, and June 2016. (Id.) The ALJ noted that Plaintiff had an evaluation with Dr. Hajeer Sabet on February 10, 2016, to address low back and buttock pain. (Id.)

The ALJ compared the subjective symptoms to objective medical evidence. The ALJ noted that Dr. Lomeo's findings were "reliable and longstanding" and that Dr. Lomeo "routinely

found normal gait, normal musculoskeletal strength, and full range of movement in all extremities," tenderness at points throughout the body, and "synovitis of the fingers and wrists." (Id. at 27.) The ALJ also noted that such findings were supported by Dr. Gill finding carpal tunnel syndrome and "'significant' cervical loss of motion, but normal gait and rapid alternating movements," as well as Dr. Sabet finding "normal gait and senses, but loss of cervical motion." (Id.) In light of such support for Dr. Lomeo's findings, the ALJ determined the conflicting findings by the chiropractor, whose findings included "moderate to severe cervical loss of motion, mild to severe lumbar loss of motion, and mild to severe thoracic loss of motion, along with mild to severe taut and tender fibers," to not be fully persuasive. (Id. at 26-27.) Therefore, the ALJ characterized Plaintiff's subjective symptoms as "not fully consistent with the objective medical record" in light of the consistent findings between Dr. Lomeo, Dr. Gill, and Dr. Sabet. (Id. at 27.) Such a finding partially justified the ALJ discounting Plaintiff's subjective symptoms of pain, in accordance with Social Security regulations. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p, 2016 WL 1119029, at *8.

The ALJ not only compared Plaintiff's subjective symptoms to objective medical evidence, though. The ALJ clearly determined Plaintiff's RFC as a result of also considering "other evidence," as defined by the Social Security regulations. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Such other evidence included opinion evidence of the state medical consultants, third-party statements of Plaintiff's family members, the opinion evidence of Plaintiff's treating rheumatologist Dr. Lomeo,[4] and Plaintiff's treatment history.

With regards to opinion evidence, the ALJ considered and described the opinions of two

---

4. Plaintiff has presented a separate argument that the ALJ improperly considered Dr. Lomeo's opinion. (Pl.'s Mem. Supp. at 12.) Therefore, a more detailed analysis of the ALJ's consideration of Dr. Lomeo's opinion is provided in a later section of this Report and Recommendation.

state medical consultants. First, the ALJ considered and described the opinion of state medical consultant Dr. Richard Surrusco from December 2013, noting that Dr. Surrusco found that Plaintiff "had retained the ability to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes, and scaffolds," and that Plaintiff "had to avoid concentrated exposure to extreme cold and hazards." (R. at 25.) Second, the ALJ considered and described the opinion of state medical consultant Dr. Navjeet Singh, noting that Dr. Singh had the exact same opinion as Dr. Surrusco, in that Plaintiff "had retained the ability to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes, and scaffolds," and that Plaintiff "had to avoid concentrated exposure to extreme cold and hazards." (Id.) The ALJ concluded that the opinions of the state medical consultants were persuasive and therefore awarded them great weight. (Id. at 27.)

With regards to third-party statements, the ALJ considered and described three statements from Plaintiff's family members. First, the ALJ considered and described a statement by Plaintiff's husband dated July 25, 2016, noting that Plaintiff's husband stated that Plaintiff "was unable to stand, sit, or lie for prolonged periods," that Plaintiff's "posture leans to the side," that Plaintiff's "coordination and dexterity have deteriorated," that Plaintiff's "poor sleep contributed to her pain and fatigue," and that Plaintiff "was experiencing difficulty with interpersonal interactions, memory, and multitasking or planning." (Id. at 23.) Second, the ALJ considered and described a statement by Plaintiff's daughter dated August 3, 2016, noting that Plaintiff's

11

daughter stated that Plaintiff's condition began to deteriorate in spring of 2013 and that due to paid and side effects of medication, Plaintiff "spent most of her time on the couch, gained weight, was unable to play with her grandchildren, and at times has trouble walking." (Id.) Third, the ALJ considered and described a statement by Plaintiff's father dated August 10, 2016, noting that Plaintiff's father stated that Plaintiff "had gained weight and had poor posture and decreased appetite," that Plaintiff was "more anxious," and that Plaintiff "would attempt to help out with chores … but would be unable to finish them." (Id.) All together, the ALJ concluded that the third-party statements by Plaintiff's family members were not consistent with the objective medical evidence and therefore awarded them little weight. (Id. at 28.)

With regards to Dr. Lomeo's opinions, the ALJ considered and described Dr. Lomeo's opinion, noting that Dr. Lomeo believed that Plaintiff was severely limited in her ability to walk and that Plaintiff qualified for a permanent handicapped parking placard. (Id. at 27.) Specifically, the ALJ concluded that Dr. Lomeo necessarily must have believed that Plaintiff could only walk for 200 feet before needing to rest in order to qualify for a permanent handicapped parking placard, in accordance with Virginia law. (Id. at 27-28.) The ALJ concluded that Dr. Lomeo's opinion on Plaintiff's ability to walk should be afforded some weight. (Id. at 27.)

With regards to Plaintiff's treatment history, the ALJ considered and described Plaintiff's doctor visits and trends in medical treatment from September 2010 to August 2016. The ALJ noted that Plaintiff has had pain management treatment and chiropractic treatment since undergoing an anterior cervical discectomy and fusion in September 2010, although she had been noncompliant with follow-up care. (Id. at 24.) The ALJ noted that Plaintiff saw Dr. Lomeo as her rheumatologist and Dr. Holland as her primary care doctor various times between July 2012 and June 2016, which resulted in various medications being prescribed and Dr. Holland

12

recommending that Plaintiff exercise. (Id. at 24-26.) The ALJ noted that Plaintiff saw a chiropractor various times in August 2013. (Id. at 24.) The ALJ noted that in February 2016, Dr. Sabet advised Plaintiff to continue pain management and also do physical therapy. (Id. at 26.) The ALJ concluded that Plaintiff's treatment history involved "a lack of referral for more intensive treatment." (Id. at 27.) Such a conclusion falls squarely within the ALJ's ability "to consider the conservative nature of a plaintiff's treatment." Dunn v. Colvin, 607 F. App'x 264, 273 (4th Cir. 2015).

Upon considering the opinion evidence of the state medical consultants, the third-party statements, the opinion of Dr. Lomeo, and Plaintiff's treatment history, the ALJ incorporated such evidence in Plaintiff's RFC finding. The RFC finding clearly credited some of Plaintiff's subjective symptoms related to walking and standing, as evidence by the incorporation of a sit/stand option, while discounting other subjective symptoms. (R. at 22, 27-28.) The ALJ's decision can be described as sorting such "other evidence" into two categories. First, the ALJ noted that some of the other evidence suggested the Plaintiff's subjective symptoms of pain were not of the severity she claimed, such as the opinions of the two state medical consultants and Plaintiff's treatment history. Second, the ALJ noted that some of the other evidence still supported Plaintiff having some pain severity that affected her ability to walk to the point that a sit/stand option was an appropriate addition to her RFC, such as the third-party statements of Plaintiff's family members and Dr. Lomeo's opinion that Plaintiff qualified for a permanent handicapped parking placard. As a result of the two categories of other evidence, the ALJ came to the conclusion that a sit/stand option for Plaintiff's RFC was an appropriate limitation, as it recognized some, but not all, of the degree of the pain and limitations described by Plaintiff.

The ALJ's ultimate conclusion on the credibility of Plaintiff's subjective symptoms was

supported by substantial evidence, as the ALJ clearly compared all of his individual conclusions on various types of evidence, which were each supported by substantial evidence, to come to the final conclusion. The ALJ's conclusions with regards to the objective medical evidence are supported by substantial evidence in the record, as the medical evidence of record shows that Plaintiff was consistently found to have normal gait, full musculoskeletal strength, and no focal deficits. (Id. at 304-12, 430-32, 450-52, 456, 501, 595-99.) The ALJ's conclusions with regards to the opinions of the state medical consultants are supported by substantial evidence, as the state medical consultants did in fact conclude that Plaintiff had retained the ability to do various levels of lifting, carrying, standing, walking, sitting, while still having to avoid some climbing and all exposure to extreme cold and hazards. (Id. at 83-85, 99-101.) The ALJ's conclusions with regards to the third-party statements of Plaintiff's family members are supported by substantial evidence, as the statements do describe Plaintiff suffering from pain and being unable to complete certain tasks. (Id. at 260-65.) The ALJ's conclusions with regards to the opinion of Dr. Lomeo are supported by substantial evidence, as Dr. Lomeo did in fact conclude that Plaintiff should qualify for a permanently handicapped parking placard. (Id. at 453-54.) The ALJ's conclusions with regards to Plaintiff's treatment history are supported by substantial evidence, as Plaintiff was consistently not referred for more serious treatment and instead was consistently told to continue medications, exercise, see a chiropractor, and attend physical therapy. (Id. at 304-12, 333-75, 430-32, 450-52, 456, 485-86, 501, 595-99.) Therefore, upon comparison and consideration of all such types of evidence, the ALJ's decision to discount most of Plaintiff's subjective symptoms is supported by substantial evidence.

Overall, the ALJ could have been more explicit in his decision that comparison of the aforementioned other evidence, alongside the comparison of the objective medical evidence, to

14

Plaintiff's subjective symptoms of pain resulted in discounting such symptoms of pain. In

particular, the ALJ did offer only a brief statement on his conclusion regarding Plaintiff's

treatment history. However, the ALJ's decision is still clear that such other evidence was

described and considered and then resulted in the ALJ discounting Plaintiff's subjective

symptoms of pain when determining Plaintiff's RFC.[5] Therefore, the ALJ acted in accordance

with law when deciding to discount Plaintiff's subjective symptoms of pain and did not discount

Plaintiff's subjective symptoms of pain solely based on their inconsistency with objective

medical evidence, despite Plaintiff's contention otherwise.

### B. The Evaluation of Certain Objective Medical Evidence

Within her argument that the ALJ did not properly consider her subjective symptoms of

pain, Plaintiff also asserts that the ALJ failed to properly assess Plaintiff's RFC by improperly

evaluating the objective medical evidence that the ALJ did consider. (Pl.'s Mem. Supp. at 8-9.)

Specifically, Plaintiff argues that the ALJ inappropriately evaluated the objective medical

evidence of Plaintiff's fibromyalgia and that the ALJ inappropriately relied on objective medical

indications that Plaintiff was clinically stable. (Id.) Each of Plaintiff's arguments is addressed in

turn below.

### 1. *Plaintiff's Fibromyalgia*

Plaintiff asserts that the ALJ routinely characterizing Plaintiff as having normal gait,

normal musculoskeletal strength, and full range of movement in all extremities was an improper

---

5. Plaintiff argues that if the ALJ did not consider evidence aside from the objective medical
evidence to discount Plaintiff's subjective symptoms of pain, then the ALJ's reasoning would
defy logic, because the ALJ found that the objective evidence could reasonably be expected to
produce the pain alleged by Plaintiff. (Pl.'s Mem. Supp. at 9-10.) However, as stated, the ALJ
clearly did consider evidence aside from objective medical evidence to evaluate the extent that
Plaintiff's subjective symptoms of pain impacted her ability to work, and so Plaintiff's argument
that the ALJ's decision defies logic is moot.

consideration of the objective medical evidence surrounding Plaintiff's fibromyalgia. (Id. at 8.)
Plaintiff further asserts such consideration of objective medical evidence was improper because
fibromyalgia affects individuals in ways that still result in them manifesting normal muscle
strength, normal neurological reactions, and a full range of motion. (Id.) In response, Defendant
argues that the ALJ properly considered Plaintiff's fibromyalgia and determined that Plaintiff did
not exhibit significant functional limitations from fibromyalgia symptoms to justify a finding of
disability. (Def.'s Mem. Supp. & Opp'n at 11-13.)

It is true that "unique problems" exist in evaluating the presence and impact of
fibromyalgia, as symptoms of fibromyalgia "are entirely subjective and [that] there are no
laboratory tests that can confirm the presence or severity of the syndrome." Loving v. Astrue,
No. 3:11cv411-HEH, 2012 WL 4329283, at *5 (E.D. Va. Sept. 20, 2012) (alteration in original).
Accordingly, when a claimant alleges a disability resulting from fibromyalgia, an ALJ must be
sure to consider more than objective medical evidence, including giving great consideration to
in-person assessments by specialists. See id.  However, as with all diagnoses, an ALJ still must
find that functional limitations result from symptoms of fibromyalgia in order to determine that a
disability exists. Cf. Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986) (per curiam).

The ALJ followed the requirements for evaluating fibromyalgia and considered evidence
of Plaintiff's fibromyalgia from the in-person assessments of rheumatologist Dr. Lomeo. (R. at
24-27.) Ultimately, the ALJ concluded that such evidence resulted in the functional limitation of
a sit/stand option in Plaintiff's RFC, which did not result in a full finding of disability. (Id. at 27.)
Such a conclusion by the ALJ is supported by substantial evidence. The record contains evidence
of Plaintiff's fibromyalgia, including common symptoms such as tenderness at certain points
throughout Plaintiff's body. (Id. at 304-12, 430-32, 450-52, 456, 501, 595-99.) However, the

16

record also contains consistent evidence that Plaintiff did not have resultant functional limitations from such symptoms, as Plaintiff was noted to have a normal gait, full musculoskeletal strength, and no focal deficits. (Id.) Accordingly, the ALJ did not improperly evaluate the objective medical evidence of Plaintiff's fibromyalgia, as he gave great consideration to the in-person assessments of Dr. Lomeo and still determined that Plaintiff did not have the functional limitations that warranted more than a sit/stand option in the RFC.

### 2. *Plaintiff's Clinical Stability*

Plaintiff asserts that the ALJ improperly relied too heavily on objective medical indications that Plaintiff was clinically stable, claiming the clinical stability is a relative term that does not speak to functional limitations. (Pl.'s Mem. Supp. at 8-9.) In response, Defendant asserts that the ALJ appropriately considered the objective medical evidence related to Plaintiff's clinical stability. (Def.'s Mem. Supp. & Opp'n at 11 n.4.)

While it is true that clinical stability is a relative term that may not always speak to functional limitations, the ALJ's consideration of Plaintiff's clinical stability does clearly speak to Plaintiff's functional limitations. Based on a review of the ALJ's decision, it is clear that the ALJ's references to clinical stability refer to the consistent findings on the Plaintiff's gait, musculoskeletal strength, muscle tenderness, and other muscular observations, which, as previously described, did not result in a functional limitation greater than a sit/stand option. Further, such clinical stability is supported by substantial evidence, as Plaintiff's normal gait, full musculoskeletal strength, and various points of tenderness were consistently reiterated with only some changes, including the development of some joint synovitis, throughout Plaintiff's medical evaluations. (R. at 304-12, 430-32, 450-52, 456, 501, 595-99.) Accordingly, the ALJ appropriately considered the objective medical evidence of Plaintiff's clinical stability.

17

## C. The Evaluation of Plaintiff's Manipulative Limitations

Plaintiff asserts that the ALJ failed properly evaluate Plaintiff's manipulative limitations in her hands that resulted from her rheumatoid arthritis and her bilateral carpal tunnel syndrome. (Pl.'s Mem. Supp. at 10-11.) Specifically, Plaintiff asserts that the ALJ gave no consideration to her rheumatoid arthritis and its related manipulative limitations, as well as that the ALJ insufficiently evaluated her manipulative limitations when addressing her bilateral carpal tunnel syndrome. (Id.) In response, Defendant asserts that the ALJ considered evidence of Plaintiff's manipulative limitations in his decision, regardless of their specific diagnostic label, and appropriately determined that Plaintiff was not entitled for manipulative limitations in her RFC. (Def.'s Mem. Supp. & Opp'n at 15-16.)

As previously stated, an ALJ is required to consider all relevant medical evidence and other evidence in the case record in making the RFC assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Such evidence includes limitations from both severe and non-severe impairments, so long as they are medically determinable impairments. Id. §§ 404.1545(e), 416.945(e); S.S.R. 96-8p, 1996 WL 374184, at *5. The ALJ specifically noted that Plaintiff's rheumatoid arthritis and bilateral carpal tunnel syndrome were medically determinable severe impairments. (R. at 19.) Therefore, the ALJ was required to consider evidence of limitations resulted from Plaintiff's rheumatoid arthritis and bilateral carpal tunnel syndrome as medically determinable severe impairments.

While the ALJ did not explicitly state which symptoms and limitations resulted from Plaintiff's rheumatoid arthritis and bilateral carpal tunnel syndrome in the RFC assessment, it is clear that the ALJ did consider such evidence from Plaintiff's rheumatoid arthritis and bilateral carpal tunnel syndrome. The ALJ specifically considered Plaintiff's reports of hand and finger

18

pain and swelling and reports of difficulty completing activities involving her hands and fingers. (Id. at 24-26.) The ALJ also specifically considered evidence of synovitis of the fingers and wrists in Plaintiff. (Id. at 26-27.) While the ALJ does directly mention that such hand and finger symptoms and reports have resulted from carpal tunnel syndrome, the ALJ's decision does not mention rheumatoid arthritis. However, according to the record, it is clear that such evidence considered by the ALJ resulted from a consideration of Plaintiff's rheumatoid arthritis. Plaintiff was diagnosed with rheumatoid arthritis on June 25, 2013. (Id. at 302.) The ALJ evaluated information about Plaintiff's hand and finger symptoms and reports from medical information dated after June 25, 2013, which consistently contains mentions of Plaintiff's arthritis, oftentimes with rheumatoid arthritis being the reason for Plaintiff's evaluation. (Id. at 302, 305-07, 314, 356, 395-96, 430-32, 450-52, 485-86, 501, 564, 595-99.) Therefore, it is clear that the ALJ's consideration of Plaintiff's hand and finger symptoms, reported manipulative functional limitations, and evidence of Plaintiff's synovitis were all resultant from Plaintiff's rheumatoid arthritis, and so the ALJ did in fact consider evidence related to Plaintiff's rheumatoid arthritis. Upon the consideration of such evidence, as previously stated the ALJ decided that Plaintiff's subjective statements of pain and manipulative limitations were not consistent with the objective medical evidence and other evidence, which resulted in the ALJ not including any manipulative limitations in Plaintiff's RFC. (Id. at 23-24.)

The ALJ's decision to not include any manipulative limitations in Plaintiff's RFC is supported by substantial evidence. Both objective medical evidence and other evidence exist to support the ALJ's decision to the standard of substantial evidence. With regards to objective medical evidence, Plaintiff was consistently found to have no focal deficits, let alone have any deficits related to her hands or fingers. (Id. at 304-12, 430-32, 450-52, 456, 501, 595-99.)

Further, the neurological test by Dr. Gill was noted as remarkable but ultimately showed bilateral carpal tunnel syndrome of only mild to less than moderate severity. (Id. at 464-66.) With regards to other evidence, the state medical consultants both determined that Plaintiff had no manipulative limitations. (Id. at 83-85, 99-101.) Accordingly, the ALJ's determination to not include any manipulative limitations in Plaintiff's RFC that resulted from her rheumatoid arthritis and carpal tunnel syndrome was both in accordance with law and supported by substantial evidence.

### D. The Evaluation of the Opinion of Dr. Lomeo

Plaintiff asserts that the ALJ failed to properly evaluate Dr. Lomeo's opinion on Plaintiff's ability to walk, in which Dr. Lomeo stated that Plaintiff was severely limited in her ability to walk and qualified for a permanent handicapped parking placard. (Pl.'s Mem. Supp. at 12.) Specifically, Plaintiff argues that the ALJ improperly took Dr. Lomeo's opinion to mean that Plaintiff could not walk 200 feet without resting and therefore a sit/stand option in her RFC was appropriate. (Id.)[6] In response, Defendant asserts that the ALJ properly evaluated Dr. Lomeo's opinion and provided appropriate reasoning supported by substantial evidence when doing so. (Def.'s Mem. Supp. & Opp. at 16-18.)

As previously stated, an ALJ is required to consider all relevant medical evidence and

---

6. Plaintiff also briefly argues that the ALJ improperly invoked a sit/stand option at all, which Plaintiff argues is not related to Plaintiff's ability to walk. (Pl.'s Mem. Supp. at 12.) This contention is incorrect, as the ability to walk is contemplated in the Social Security regulations addressing sit/stand options. A sit/stand option is a special situation given to claimants that are "compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing." S.S.R. 83-12, 1983 WL 31253, at *4. The sit/stand option is clearly for claimants that are "not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." Id. (emphasis added). Therefore, contrary to Plaintiff's assertion, the ability to walk is relevant to the determination of a sit/stand option.

other evidence in the case record in making the RFC assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Medical opinions are one type of evidence that an ALJ considers when determining a claimant's RFC. 20 C.F.R. §§ 404.1527(b), 416.927(b). With regards to Dr. Lomeo's opinions being evaluated as the opinions of a treating source, specific rules do exist for the evaluation of treating sources' opinions. 20 C.F.R. §§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2); S.S.R. 96-2p, 1996 WL 324188, at *1 (July 2, 1996).[7] Generally, opinions from treating sources are given more weight than other opinions, and if it is found that a treating source's opinion on the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Four requirements essentially exist for an opinion to be given controlling weight: (1) the opinion must come from a treating source; (2) the opinion must be a "medical opinion," defined as an opinion about the nature and severity of the claimant's impairments; (3) the opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (4) the opinion must not be inconsistent with the other substantial evidence in the record. S.S.R. 96-2p, 1996 WL 324188, at *2. If an opinion does not meet the aforementioned four requirements, it cannot be given controlling weight. Id.

If an opinion is not given controlling weight as a treating source's opinion, the Social

---

7. Effective in a final rule dated March 27, 2017, the SSA added 20 C.F.R. §§ 404.1520c and 416.920c, which address how the SSA considers medical opinions and eliminate special consideration for treating sources. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867-68, 5878-79 (Jan. 18, 2017). However, the final rule states that 20 C.F.R. §§ 404.1527 and 416.927 still apply to claims filed before March 27, 2017. Id. at 5844. Plaintiff filed her initial claim on July 9, 2013, meaning that 20 C.F.R. §§ 404.1527 and 416.927, as well S.S.R. 96-2p, which provides explanation of the treating source rules in 20 C.F.R. §§ 404.1527 and 416.927, still apply to Plaintiff's case.

Security regulations require that certain factors be considered to determine the weight given to the medical opinion, as required of all other medical opinions: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); S.S.R. 96-2p, 1996 WL 324188, at *4. An ALJ is not required to explicitly analyze each of the aforementioned factors if the ALJ is clear in his conclusions as to which factor resulted in less weight for the opinion at question, so long as the ALJ is clear as to which factor has justified his conclusion. Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) ("While the ALJ did not explicitly analyze each of the … factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons.").

In this case, the ALJ assigned some weight to Dr. Lomeo's opinion that Plaintiff was severely limited in her ability to walk and that Plaintiff qualified for a permanent handicapped parking placard. (R. at 27.)[8] Specifically, the ALJ concluded that Dr. Lomeo necessarily must have believed that Plaintiff could only walk for 200 feet before needing to rest in order to qualify for a permanent handicapped parking placard, in accordance with Virginia law. (Id. at 27-28.)[9]

---

8. The ALJ dates Dr. Lomeo's opinion at October 2014. (R. at 27.) However, it appears that the opinion was signed and dated in August 2014. (Id. at 453-54.)

9. The ALJ did not explicitly state in his decision that a person unable to walk 200 feet without stopping to rest qualified for a permanent handicapped parking placard in accordance with Virginia law. Instead, the ALJ misquoted Virginia Code § 46.2-1240 in a footnote and omitted information in the law about a person unable to walk 200 feet without stopping to rest. (R. at 27 n.1.) However, Virginia law is clear that if a person cannot walk 200 feet without stopping to rest, cannot walk without the use of an assistive walking device, or is afflicted by a variety of other diseases or conditions, then that person qualifies for a permanent disability parking placard. See VA. CODE § 46.2-1240. Therefore, the ALJ's conclusion about Dr. Lomeo's opinion makes logical sense, because Dr. Lomeo did not state that Plaintiff required an assistive walking device and because Plaintiff was not afflicted by the other diseases and conditions listed in the law, the

22

While it is possible that Dr. Lomeo could have been qualified as a treating source whose opinions may have been entitled to controlling weight, the ALJ conducted the appropriate opinion evaluation analysis by clearly citing inconsistences in the record that merited giving only some weight to Dr. Lomeo's opinion. Specifically, the ALJ stated that the record lacked objective evidence to support that Plaintiff had a severely limited ability to walk, citing the fact that Plaintiff was routinely found to have a normal gait, full musculoskeletal strength, and full range of movement. (Id.) Despite such a lack of objective evidence, the ALJ still credited Dr. Lomeo's opinion by considering Plaintiff to have a limited enough of a physical ability to justify granting Plaintiff a sit/stand option. (Id. at 28.)

Such a decision by the ALJ to afford some weight to Dr. Lomeo's opinion that Plaintiff had a severely limited ability to walk is supported by substantial evidence. On one hand, the record lacks objective evidence of Plaintiff having a severely limited ability to walk, with Plaintiff consistently noted to normal gait, full musculoskeletal strength, and no focal deficits. (Id. at 304-12, 430-32, 450-52, 456, 501, 595-99.) Further, the state medical consultants also supported that Plaintiff could walk and stand for about six hours in an eight-hour work day. (Id. at 83, 96.) On the other hand, due to qualifying Plaintiff for a permanent disabled parking placard, Dr. Lomeo clearly must have believed that Plaintiff could only walk for 200 feet without stopping to rest. (Id. at 453-54.) Accordingly, the ALJ considered both types of evidence from the record to determine that Dr. Lomeo's opinion deserved only some weight, and therefore a sit/stand option was appropriate.

## V. RECOMMENDATION

For the reasons set forth, the undersigned U.S. Magistrate Judge recommends that

---

only way Dr. Lomeo could have believed Plaintiff qualified for a permanent disability parking placard was if Dr. Lomeo believed that Plaintiff could not walk 200 feet without stopping to rest.

Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 12) be GRANTED, and that the final decision of Defendant be AFFIRMED.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of

record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

_____
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

August __13__, 2018
Alexandria, Virginia

25