IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MELINDA ALLEN, )
)
        Plaintiff, )
)
v. ) Civil Action No. 1:17-cv-1156 (AJT/TCB)
)
NANCY A. BERRYHILL, Acting )
Commissioner, Social Security )
Administration, )
)
        Defendant. )
)

## ORDER

Melinda Allen ("Plaintiff") seeks judicial review pursuant to the 42 U.S.C. § 405(g) of a final decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The dispositive issue is whether the Defendant's decision regarding Plaintiff's "residual functional capacity" is supported by substantial evidence. Based on the administrative record, the parties' pleadings,[1] and a detailed *de novo* review of the Magistrate Judge's Report & Recommendation [Doc. 16] ("R&R"), the Court concludes that the Defendant's decision finding that Plaintiff can perform the "sit/stand option" is not supported by substantial evidence, and that Plaintiff has established her entitlement to the requested DIB.

Accordingly, Plaintiff's motion for summary judgment will be granted; Defendant's motion for summary judgment will be denied; Defendant's decision reversed; and the matter will be remanded for an award of benefits by the Defendant.

---

[1] The motions and briefs in this case include Plaintiff's Motion for Summary Judgment [Doc. 9], Plaintiff's Memorandum in Support of Motion for Summary Judgment [Doc. 10] ("Pl.'s Memo Supp."), Defendant's Motion for Summary Judgment [Doc. 12], and the Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment [Docs. 13 & 14].

## I. BACKGROUND[2]

Plaintiff filed her application for DIB on July 9, 2013, alleging disability with an alleged onset date ("AOD") of November 9, 2012. R. at 157-59. On January 14, 2014, Plaintiff amended her AOD to April 15, 2013, *id.* at 162, and on July 25, 2016, Plaintiff further amended her AOD to September 3, 2013, *id.* at 188-89.

Plaintiff's claims were first denied on December 5, 2013, then again on reconsideration on August 18, 2014. *Id.* 76-88, 90-104, 114-19. On August 29, 2014, Plaintiff filed a request for a hearing in front of an administrative law judge ("ALJ"), *id.* at 120-21, which was held in front of ALJ F.H. Ayer on August 24, 2016. At the hearing, Plaintiff was represented by counsel and the Plaintiff and a vocational expert testified. *Id.* at 37-75. On October 21, 2016, the ALJ issued his decision denying Plaintiff's claim *Id.* at 14-30. On November 9, 2016, Plaintiff appealed the ALJ's decision to the Appeals Council for the Office of Disability and Adjudication and Review ("Appeals Council"). *Id.* at 154. The Appeals Council denied Plaintiff's request for review on September 1, 2017, thereby making the ALJ's decision the final decision of the Commissioner. *Id.* at 1-3.

On October 16, 2017, Plaintiff filed her Complaint [Doc. 1] in this Court, and Defendant timely filed an Answer [Doc. 5] on March 12, 2018. Both parties filed their motions for summary judgment [Docs. 9, 12] by April 23, 2018, and on August 13, 2018, the Magistrate Judge issued her Report and Recommendation ("R&R") in which she recommended that the Court grant Defendant's motion for summary judgment and deny the plaintiff's motion for summary judgment.

---

[2] The following facts are drawn from the certified Administrative Record ("R."), which was filed under seal pursuant to Local Civil Rules 5(B) and 7(C)(I).

On August 27, 2018, Plaintiff objected to the R&R on several grounds. [Doc. 17 ("Plf.'s Obj.")].[3] The matter is now ripe for disposition.

## II. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Magistrate Judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommended disposition. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

Determination of eligibility for social security benefits involves a five-step inquiry. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam). At the first step, the claimant must demonstrate that she is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). At the second step, the claimant must prove that she has "a severe impairment . . . or combination of impairments which significantly limit[] [her] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). At the third step, if the impairment matches or equals one of the impairments listed in the Social Security Act, and the impairment lasts—or is expected to last— for at least twelve months, then it constitutes a qualifying impairment and the analysis ends. *Id.* § 404.1520(d); *see* 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of those listed, then the administrative law judge ("ALJ") must compare the claimant's RFC with the "physical and mental demands of [the claimant's] past

---

[3] First, she contends that the ALJ inappropriately rejected "the subjective statements of the claimant based on the absence or weakness of supportive objective medical evidence, alone." Plf.'s Obj. at 1. Second, she contends that the ALJ failed to provide an explanation for why he assigned the level of weight to the third-party statements made by Plaintiff's family members, Plaintiff's treatment history, and the opinions of Plaintiff's treating rheumatologist, Dr. Rosalia Lomeo, M.D or why he omitted certain manipulative limitations from Plaintiff's residual functional capacity, notwithstanding direct testimony from a vocational expert. Plf.'s Obj. 2-9. On September 10, 2018, Defendant filed a response to Plaintiff's objections. [Doc. 19 ("Def.'s Obj.")].

3

relevant work." *Id.* § 404.1520(f). If such work can be performed, then benefits will be denied. Finally, if the claimant cannot perform past work, then the burden shifts to the Commissioner to show that the claimant is capable of performing other work that is available in significant numbers in the national economy. *Id.* § 404.1520(g)(1).

A Court's review of the Commissioner's final decision regarding DIB is limited to considering whether the ALJ's findings are supported by substantial evidence and whether the correct law was applied. 42 U.S.C. § 405(g); *Walls*, 296 F.3d at 290. If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Substantial evidence is "more than a mere scintilla," but "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court must consider the record as a whole, *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991), and the Court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Barnhart*, 296 F.3d at 290 (quoting *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001)). At the same time, the Court "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Thomas v. Celebrezze*, 331 F.2d 541, 542 (4th Cir. 1964). As such, when determining whether substantial evidence supports the Commissioner's decision, the Court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-

40 (4th Cir. 1997). "If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision." *Coffman*, 829 F.2d at 517; *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).

### III. ALJ'S DECISION

Under the required five-step sequential analysis, the ALJ here made the following findings of fact and conclusions of law.

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 3, 2013, which the ALJ accepted as Plaintiffs AOD in light of Plaintiff subsequent request to extend the AOD to that date. R. at 19. At step two of the sequential evaluation, the ALJ found that Plaintiff suffered from "severe impairments," including cervical spine degenerative disc disease, status post ACDF from C5-C7, postlaminectomy syndrome spondylosis, radiculitis, cervicalgia, arthritis, sprain/strain, fibromyalgia, myalgia, insomnia, chronic fatigue syndrome, chronic pain syndrome, inflammatory arthritis, rheumatoid arthritis, obesity, asthma, lumbosacral spondylosis, lumbar strain, degenerative disc disease, brachial neuritis, bilateral carpal tunnel syndrome, and ulnar neuropathy. *Id.* at 19.

Nevertheless, at step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically-equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 22. In that regard, the ALJ went on to find, before reaching step four of the sequential evaluation, that Plaintiff had the residual functional capacity ("RFC")[4] to perform "light work" as defined in

---

[4] An individual's RFC is the most that an individual is able to do despite limitations caused by her impairments, *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

20 C.F.R. § 404.1567(b).[5] In his assessment of Plaintiff's RFC, the ALJ included a narrative discussion describing the relevant medical and non-medical evidence before him. *Id.* at 22-28. Specifically, the ALJ considered: (1) Plaintiff's subjective symptoms of pain; (2) objective medical evidence, including Plaintiff's treatment with various physicians and treatment history; (3) evidence of Plaintiff's manipulative limitations; and (4) the opinions of Dr. Rosalia M. Lomeo, M.D., Plaintiff's treating rheumatologist. The ALJ consistently noted the findings by Plaintiff's physicians regarding her normal gait, musculoskeletal strength, muscle tenderness, and other muscular observations. *Id.* at 304-12, 430-32, 450-52, 456, 501, 595-99.

At step four of the sequential evaluation, the ALJ found that Plaintiff is "unable to perform any past relevant work," *id.* at 28,[6] but nevertheless found, at step five of the sequential evaluation, that Plaintiff was able to perform jobs that existed in significant numbers in the national economy, and therefore, Plaintiff was not under a disability, as defined by the Social Security Act, from September 2, 2013 to the date of the ALJ's decision. *Id.* at 30.

## IV. ANALYSIS

Under the applicable standard of review, the Court must determine whether the record contains substantial evidence to support the ALJ's RFC determination and whether the ALJ applied the correct legal standard. As noted above, a showing of substantial evidence does not

---

[5] The "light work" designation meant that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, never climb ladders, ropes, and scaffolds climb ladders, ropes, or scaffolds, that Plaintiff required the ability to alternate between sitting and standing about every thirty minutes, and that Plaintiff must avoid concentrated exposure to extreme cold and hazards, such as machinery and heights, avoid concentrated exposure to fumes odors, dusts, gases, poor ventilation, and avoid exposure to latex products. R. at 22. The ALJ's determination that Plaintiff is able to alternate between sitting and standing about every thirty minutes is referred to as the "sit/stand option." *See* S.S.R. 83-12, 1983 WL 31253, at *3 (Jan. 1, 1983).

[6] Once Plaintiff established that she was unable to return to her past relevant work, the burden then shifted to the Commissioner to show that other jobs exist in the national economy that plaintiff can perform in order to deny her disability insurance benefits. 20 C.F.R. § 404.1566; *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

require a showing of preponderance, but the record as a whole must *not* contradict the ALJ's findings. Accordingly, the weight attached to the various sources of evidence is often outcome determinative of a disability claims; and, as discussed below, the law in certain instances specifies the comparative weight to be given to particular evidentiary sources.

### A. The ALJ Failed to Recognize Dr. Lomeo's as a Treating Physician and Specialist, and Did Not Accord Her Medical Opinions Proper Weight as Required by Law.

Plaintiff centrally contends that the ALJ erroneously disregarded the opinion of treating rheumatologist Dr. Lomeo, and improperly concluded, without adequate explanation, that Dr. Lomeo's opinion is "sufficient to justify the sit/stand option." Plf.'s Obj. at 7-9. Defendant, in response, contends that ALJ's findings support his conclusion that Plaintiff's RFC permitted the sit/stand option. Def.'s Obj. at 6-7. According to Defendant, the ALJ considered "the other medical evidence, including longitudinal treatment record [from Dr. Lomeo and others], extent and nature of treatment modalities, and opinion evidence [from Dr. Lomeo]," which together favored a finding that there were no work-preclusive limitations. *Id.* at 10 (citing R. at 24-28).

While all medical opinions, regardless of their source, should be reviewed together with the rest of the relevant evidence, more weight is to be given to opinions from a treating source because those medical professionals are more able to provide a detailed, longitudinal picture of a claimant's medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *See* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017). Accordingly, when a medical source is a treating physician, and that opinion "is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Id*; *see also Coffman*, 829 F.2d at 517 ("[The treating physician] rule requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence.").[7] That said, the ALJ is not required to give a treating source opinion controlling weight and should give a treating source opinion significantly less weight where it "is not supported by clinical evidence or if it inconsistent with other substantial evidence." *Craig*, 76 F.3d at 590. In any case, however, the ALJ must "always give good reasons" for the weight accorded to a treating source's opinion. 20 C.F.R. § 404.1527.

In this case, the ALJ failed to give appropriate weight to the opinions of Plaintiff's treating physician, Dr. Lomeo. Dr. Lomeo began treating Plaintiff in 2013, and as evidenced by the hundreds of pages of medical evidence in this case, Plaintiff underwent continued and frequent treatment before her. Dr. Lomeo's records consistently demonstrate treatment of Plaintiff for the same symptoms: pain, tenderness and stiffness in Plaintiff's joints. R. at 304-312, 396, 430-32, 450-54, 501, 599. According to these same documents, these symptoms have not subsided and in some cases, have increased in severity.[8] Moreover, the medical opinions

---

[7] Even if a treating physician's opinion is non-controlling, there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. S.S.R. 96-2p, 1996 WL 324188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

[8] Beginning in July 2013, Dr. Lomeo documented tender points in the muscles located near Plaintiff's ribs, knees, base of the skull, upper back, scapula, and buttocks. *Id.* 304-12. In December 2013, Plaintiff returned to Dr. Lomeo, reporting that she had more hand tenderness and swelling and at which Dr. Lomeo noted tender points. *Id.* at 432. Over the next six months (in February, April, and June 2014), Plaintiff saw Dr. Lomeo for follow-up visits where physical examinations remained unchanged with the exception of synovitis of the metacarpophalangeal joints in April. In August 2014, Dr. Lomeo certified on Plaintiff's disability placard application that Plaintiff was permanently disabled for disability parking privileges because she was severely limited in her ability to walk. *Id.* at 453-54. And in September 2014, Plaintiff saw Dr. Lomeo, again reporting pain and stiffness, difficulty with activities of daily living, and inability to sit or stand for long periods. *Id.* at 599. Dr. Lomeo noted tender points. *Id.* Plaintiff continued to see Dr. Lomeo for routine follow-ups in December 2015, March 2016, and June 2016 during

8

reflected in Dr. Lomeo's medical records and reports are credible in light of medically acceptable practices. Dr. Lomeo records in particular reflect that she continually tested for and Plaintiff increasingly exhibited the medically-accepted and recognized signs of fibromyalgia, which is not susceptible of objective verification through traditional means. Specifically, she noted on numerous occasions that Plaintiff complained of tenderness at the appropriate focal points. *Id.* at 8-11. Finally, unlike the non-treating physicians upon whose testimony and reports the ALJ placed great emphasis, Dr. Lomeo is a rheumatologist, and thus a specialist in the particular types of conditions Plaintiff claims to suffer from. Of particular note is that, in the course of her treatment of Plaintiff, Dr. Lomeo expressed her opinion that Plaintiff is "severely limited in ability to walk due to an arthritic, neurological or orthopedic condition." *Id.* at 453-54. And based on that opinion, Dr. Lomeo approved Plaintiff for a disability / handicapped parking placard, an indication of her severe disability. *Id.* at 27-28.

The ALJ concluded that the record lacked objective evidence to support Dr. Lomeo's opinion. *Id.* at 28. But the record does not sufficiently call into question Dr. Lomeo's opinions and her disability opinion *is* consistent with the medical records presented in the record, including objective test results from other treating physicians[9] and Plaintiff's admitted activities and limitations of daily living. Drs. Holland and Gill (a neurologist) recorded ongoing complaints of intense pain and stiffness throughout Plaintiff's body, as well as fatigue, thus supporting Dr. Lomeo's medical opinions. The only physicians whose opinions were at odds

---

which she reported some benefit in her myalgias and hand pain from her medication but continued to report that she could not sit or stand for long periods. *Id.* at 450-52.

[9] The statements of another specialist, Dr. Hajeer Sabet, in February 2016, are consistent with Dr. Lomeo's opinions and conflict with the ALJ's assessment that Plaintiff exhibits normal musculoskeletal strength. In Plaintiff's February 2016 visit, Dr. Sabet noted that Plaintiff exhibited symptoms for low back and buttock pain that made standing for prolonged periods especially sensitive, including tenderness and pain with limited range of movement. *Id.* at 485-86.

9

with Dr. Lomeo's evaluation are the opinions of Drs. Surrusco and Singh, state medical consultants retained to give opinions as to Plaintiff's disability, neither of whom are Plaintiff's treating physicians, but as to whose opinions the ALJ gave "great weight," *id.* at 27. And even these physicians noted that "the medical evidence shows that . . . [plaintiff] experience[s] pain and tenderness in [her] back, jaw and joints..." *Id.* at 88, 104.

Moreover, Dr. Lomeo's findings are not inconsistent with other substantial evidence, namely Plaintiff's own testimony before the ALJ[12] and statements made by Plaintiff's family members, each of whom emphasized Plaintiff's difficult walking, buttoning her clothing, and performing daily tasks. These subjective assessments, particularly in the context of fibromyalgia discussed *infra*, corroborate Dr. Lomeo's own opinions and underscore the strong weight that should be afforded to Dr. Lomeo's own medical opinions. In the end, the ALJ did not properly apply the treating physician standard in reaching his decision, despite the medical evidence submitted by Plaintiff's treating physicians, particularly Dr. Lomeo regarding Plaintiff's fibromyalgia, which is replete with references during her course of treatment of several years to observed tender points throughout her body.

The failure to assign Dr. Lomeo controlling weight was particularly problematic given Plaintiff's disability, viz., fibromyalgia. As the courts have repeatedly noted, in cases of disability caused by fibromyalgia, the treating physician rule is bolstered when that claimant is

---

[12] At her hearing, Plaintiff testified that her upper extremities are chronically painful, swollen, heavy, tingling, and weak" and that Plaintiff "often drops things and has difficulty with tasks such as cutting food, opening jars, and buttoning buttons." *Id.* at 23. Further, the ALJ made note of Plaintiff's subjective statements of pain to various medical professionals at various dates. The ALJ noted that Plaintiff reported "increased hand pain and swelling" on May 31, 2013, to her treating rheumatologist Dr. Lomeo, *id.* at 25; "chronic neck pain and being unable to work due to foot pain, back pain, and feeling weak" on June 5, 2013, to her primary care physician Dr. Susan Holland, *id.*; "joint pain in her hands," in July and August 2013, *id*; "difficulty even putting on makeup, inability to lift anything, and inability to stand for more than a few minutes," and an inability to sometimes even "get out of bed" *Id.*

seeing a specialist. R&R at 16. Generally, "the Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). Thus, when evaluating the presence and impact of fibromyalgia, this deference to the treating specialist is particularly appropriate due to the unique problems in diagnosing the disease and evaluating its impact on the patient. Indeed, numerous courts have recognized that fibromyalgia's "symptoms are entirely subjective and [that] there are no laboratory tests that can confirm the presence or severity of the syndrome." *Stahlman v. Astrue*, No. 3:10CV475, 2011 U.S. Dist. LEXIS 67715, at *21 (E.D. Va. May 17, 2011) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)); *see also Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007) ("[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant.") (citation omitted); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (observing that fibromyalgia "eludes" objective testing and that "'objective' findings are not required in order to find that an applicant is disabled") (quoting *Donato v. Sec. of Dep't of Health and Human Servs.*, 721 F.2d 414, 418-19 (2d Cir. 1983)). As such, under the particular facts of this case, the opinions of the treating rheumatologist was entitled to be accorded far more weight than those of non-treating and non-specialist physicians, so long as the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence. 20 C.F.R. § 404.1527(c)(2).

Dr. Lomeo is a specialist in treating fibromyalgia. Therefore, her opinions are entitled to greater weight than given by the ALJ. In addition, as discussed *supra*, her opinions, notably

Plaintiff's difficulty walking, standing and her pain and tenderness throughout her body, were corroborated and not inconsistent with other substantial evidence in the record, including by Plaintiff's own testimony and the subjective assessment from Plaintiff's family. While Dr. Lomeo occasionally noted Plaintiff's normal gait, musculoskeletal strength, muscle tenderness, and other muscular observations, these observations were limited by the clinical setting in which they were observed, and evaluated in light of her consistent, overall conclusions and opinions concerning the effects of her fibromyalgia, which cannot be objectively-verifiable and must necessarily be based on subjective complaints. *See Rogers*, 486 F.3d at 245.

Once the appropriate weight is given to Dr. Lomeo's medical opinions, as well as the statements of prior treating physicians and of other substantial, subjective evidence, the ALJ's decision that the Plaintiff's RFC permits her to perform light work under the sit/stand option is not supported by substantial evidence. 20 C.F.R. § 404.1527; *Coffman*, 829 F.2d at 517 ("[The treating physician] rule requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence.").

### B. The ALJ Failed to Provide Good Reasons for Discounting Dr. Lomeo's Medical Opinions.

When an ALJ does not give a treating source opinion controlling weight and determines that the claimant is not disabled, the ALJ may, as he did here, assign a lesser weight to the opinion but:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (July 2, 1996).[13] The ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the treating source opinion. *See Pinson v. McMahon*, No. 3:07-1056, 2009 U.S. Dist. LEXIS 22766, 2009 WL 763553, at *11 (D.S.C. Mar. 19, 2009) (holding that the ALJ properly analyzed the treating source's opinion even though he did not list the five factors and specifically address each one). But, at a minimum, there must be a discernable basis for why the ALJ assigned the weight that he or she did. Accordingly, the Fourth Circuit has noted that a court "cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984). Put another way, "[u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977); *see also* 20 C.F.R. 404.1527(c)(2) ("We will always give *good reasons* in our notice of determination or decision for the weight we give your treating source's medical opinion.") (emphasis added).

The ALJ failed to adequately explain why he discounted Dr. Lomeo's opinions and concluded that Plaintiff had adequate capacity to work in accordance with the sit/stand option.

---

[13] The following factors are used to determine the weight given to the opinion: (1) length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record, (5) the degree of specialization of the physician, and (6) any other factors which may be relevant, including understanding of the disability programs and their evidentiary requirements. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

13

The only explanation that appears in the record for this conclusion is that there are some references in the record, including Dr. Lomeo's notes and reports, that Plaintiff demonstrated a normal gait and strength. *See* R. at 27 ("Her [Dr. Lomeo's] allegations regarding difficulty walking and standing for prolonged periods are especially inconsistent, considering the evidence of routinely normal gait and strength, and no more than mild lumbar spine abnormalities"). But this explanation does not account for or explain away other more extensive, consistent, continuous and predominating observations by Dr. Lomeo and others, concerning the debilitating effects of fibromyalgia and Plaintiff's inability to function in accordance with the sit/stand option. In light of this other evidence, because the ALJ failed to provide sufficient justification for the "some weight" given to the Dr. Lomeo's opinions, *id.*, his decision in this regard did not meet the requirements of 20 C.F.R. § 416.927(c)(2), and therefore is not supported by substantial evidence. *See Wilson,* 378 F.3d at 544 ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like Wilson.").

### C. Propriety of Reversal

In social security appeals, a district court has statutory authority to reverse an administrative decision or remand the case for further proceedings. 42 U.S.C. § 405(g); *Coffman,* 829 F.2d at 519; *see also Vitkek v. Finch,* 438 F.2d 1157, 1157-58 (4th Cir. 1971) (where ALJ's determination is in clear disregard of the overwhelming weight of the evidence, a court can modify or reverse the ALJ's decision with or without remanding the case for rehearing); *Breeden v. Weinburger,* 493 F.2d 1002, 1011-12 (4th Cir. 1974) (stating that reversal

is appropriate "where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard" and "when reopening the record for more evidence would serve no useful purpose"). Based on the entire record, the Court concludes that the decision of the Commissioner should be reversed, with no further proceedings other than an award to the Plaintiff of her disability insurance benefits. The process to date has been a long one and the Commissioner has had ample opportunity to create the necessary record.

## V. CONCLUSION

Based on the record before the Court, this Court finds that it has jurisdiction to review the final decision of the Commissioner denying Plaintiff disability insurance benefits, there are no genuine issues of material fact, and Plaintiff is entitled to judgment as a matter of law. Accordingly, for the above stated reasons, it is hereby

ORDERED that Plaintiff Melinda Allen's Motion for Summary Judgment be, and the same hereby is, **GRANTED**; and it is further

ORDERED that Defendant's Motion for Summary Judgment be, and the same hereby is, **DENIED**; and it is further

ORDERED that the final decision of the Commissioner be, and the same hereby is, **REVERSED**; and the case is **REMANDED** to the Commissioner for an award of disability insurance benefits for the period of disability beginning on September 3, 2013.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 18, 2019